UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CAROL LUCARELLI, Special Administratrix of the Estate of JOSEPH WEAVER, deceased, and REGINA WEAVER, as next of kin to JOSEPH WEAVER, deceased,<br><br>    Plaintiffs,<br><br>vs.<br><br>RENAL TREATMENT CENTERS-ILLINOIS, INC., DOES 1 through 50, inclusive, and ROE CORPORATIONS 1 through 50, inclusive,<br><br>    Defendants. | Case No. 4:08CV00099 ERW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Renal Treatment Centers-Illinois, Inc.'s Motion to Dismiss [doc. #52].

**I.    BACKGROUND**[1]

Plaintiff Carol Lucarelli, Special Administratrix of the Estate of Joseph Weaver, and Plaintiff Regina Weaver, next of kin of Joseph Weaver (collectively "Plaintiffs") sued Defendant Renal Treatment Centers-Illinois, Inc. and other Defendants unknown to Plaintiffs (collectively "Defendants") for damages resulting from the death of Joseph Weaver. Prior to his death, Joseph Weaver received hemodialysis treatments at a facility in St. Louis, Missouri, operated by Defendant Renal Treatment Centers-Illinois, Inc. According to Plaintiffs, these treatments caused injury to Mr. Weaver and ultimately caused his death. Plaintiffs allege that Defendants knew or

---

[1]For the purposes of this Motion to Dismiss, the facts alleged by Plaintiffs in their Amended Complaint are taken as true.

should have known that the treatments they were administering posed a serious risk of injury or death and, irrespective of that risk, they continued to administer treatments.

Plaintiffs initially sued Defendants in Nevada state court, in Clark County on August 8, 2006. Thereafter, Defendants filed a Notice of Removal in the United States District Court for the District of Nevada on September 6, 2007. The case was ultimately transferred to this Court by the District of Nevada on January 22, 2008. On July 8, 2008, Defendants filed their Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Defendants allege that the case should be dismissed because:

> (a) No proper descendent or Guardian ad litem has been appointed;
>
> (b) the Amended Complaint is not supported by an affidavit of merit required to support a medical negligence case under Missouri law . . . ;
>
> (c) the Amended Complaint fails to allege any specific cause of injury and, instead of alleging some specific negligent act or omission, the Amended Complaint sets forth a generic shopping list of alternative ways in which a provider of hemodialysis services might have acted negligently;
>
> (d) the Amended Complaint cannot properly rely on the doctrine of *res ipsa loquitur* to maintain an action for injury due to unsafe dialysis treatment;
>
> (e) the Amended Complaint fails to properly plead any products liability action; and products liability actions are not available against health care providers; and
>
> (f) the Plaintiffs are precluded from seeking punitive damages under settled Missouri law.

Defendants' motion is fully briefed and currently pending before this Court.

## II. LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a defendant may file a motion to dismiss for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When

2

deciding a motion to dismiss under Rule 12(b)(6), the Court must assume that all material facts alleged in the complaint are true. *Davis v. Monroe City Bd. of Educ.*, 526 U.S. 629, 633 (1999). Further, the court must view all facts and inferences in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* A dismissal under Rule 12(b)(6) should be granted "only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (*quoting Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1976). However, to avoid dismissal under Rule 12(b)(6), "the complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999).

## III. DISCUSSION

A. <u>Choice of Law</u>

This case was transferred to this Court after the District of Nevada granted Defendants' Motion to Transfer under 28 U.S.C. § 1404(a). When there is a change of venue under 1404(a), "the transferee district court [is] obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Thus, this Court must apply Nevada choice of law principles to determine what law governs the dispute.

With respect to tort actions in the state, Nevada has adopted the Second Restatement's "most significant relationship test," which provides that tort issues are governed by the law of the state that "'has the most significant relationship to the occurrence and the parties.'" *Gen. Motors Corp. v. Eighth Judicial Dist. Court*, 134 P.3d 111, 116 (Nev. 2006). In this case, that state is clearly Missouri, as the treatment at issue in this case took place in Missouri. Therefore, under Nevada choice of law principles, this Court will apply Missouri law to the tort issues in this dispute.

B. <u>Standing</u>

Defendants first argue that Plaintiffs lack standing to bring a wrongful death action in Missouri. Specifically, Defendants allege that Plaintiff Carol Lucarelli is neither a descendant of the decedent nor a plaintiff ad litem and, therefore, is not a proper party. Further, Defendants allege that the relationship between Plaintiff Regina Weaver and the decedent is not established in the pleadings and, thus, it is unclear whether Plaintiff Regina Weaver is a proper party of interest.

Missouri law places limitations on who may bring a wrongful death action. Such a lawsuit can be maintained:

> (1) By the spouse or children or the surviving lineal descendants . . . ;
>
> (2) If there be no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants . . . ;
>
> (3) If there be no persons in class (1) or (2) entitled to bring the action, then by a plaintiff ad litem. Such plaintiff ad litem shall be appointed by the court having jurisdiction over the action for damages provided in this section upon application of some person entitled to share in the proceeds of such action.

Mo. Rev. Stat. § 537.080(1). Applying this law to the circumstances of this particular case, there appear to be some potential shortcomings in Plaintiffs' pleadings with respect to the issue of

4

standing. However, these pleadings were filed in Nevada state court more than one year ago, without knowledge that the case would find its way to the Eastern District of Missouri. This Court can find no reason why Plaintiffs should not be allowed to amend their complaint to sue in the proper capacity.

Rule 17(a)(3) of the Federal Rules of Civil Procedure addresses this precise issue when it states that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Further, Rule 15 of the Federal Rules requires the Court to "freely give leave [to amend] when justice so requires." An amendment to change the party or the party's name under this rule will relate back to the time of the original pleading. Fed. R. Civ. P. 15(c)(1)(C). Accordingly, this Court will not dismiss this case for lack of standing and must, instead, allow Plaintiffs to amend their complaint.

It is this Court's practice to set a deadline for the amendment of pleadings, including the addition of parties. No such deadline has been set in this case. The Court will issue a case management order that will notify the parties of the deadline for all such amendments. Both parties in this case will have the opportunity to address the issue of standing and cure any potential problems by making changes to their pleadings before the deadline.

C.  Medical Malpractice

In their Motion to Dismiss, Defendants make a general allegation that Plaintiffs have failed to properly plead a claim for medical malpractice under Missouri law. Within this general allegation are three more specific allegations: that Plaintiffs failed to submit an expert's affidavit supporting the claim for medical malpractice; that Plaintiffs failed to properly plead conduct by Defendants that

amounts to medical malpractice; and that Plaintiffs improperly rely on the doctrine of res ipsa loquitur.

        1.     *Expert Affidavit Supporting Claim for Medical Malpractice*

Defendants maintain that Plaintiffs have failed to comply with the affidavit requirement set forth in Mo. Rev. Stat. § 538.225. That Section requires a plaintiff to submit an affidavit "[i]n any action against a health care provider for damages for personal injury or death on account of the rendering of or failure to render health care services." The affidavit must state that the plaintiff

> has obtained the written opinion of a legally qualified health care provider which states that the defendant health care provider failed to use such care as a reasonably prudent and careful provider would have under similar circumstances and that such failure to use such reasonable care directly caused or directly contributed to cause the damages claimed in the petition.

*Id.* In this case, Plaintiffs have not submitted an expert affidavit supporting a claim for medical malpractice, so the issue to be resolved is whether Plaintiffs were initially required to submit such an affidavit.

"A health care affidavit is required if the relationship of the parties is that of health care provider and recipient and if the 'true claim' relates only to the provision of health care services." *Mello v. Giliberto*, 73 S.W.3d 669, 679 (Mo. Ct. App. 2002) (citing *Vitale v. Sandow*, 912 S.W.2d 121, 122 (Mo. Ct. App. 1995); *St. John's Reg'l Health Ctr. v. Windler*, 847 S.W.2d 168, 171 (Mo. Ct. App. 1993)). "Health care services" is defined in Mo. Rev. Stat. § 538.205(4) as "any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or . . . in the ordinary course of furthering the purposes for which the institution is organized." Such services include "transfer to a patient of goods or services

6

incidental or pursuant to the practice of the health care provider's profession or in furtherance of the purposes for which an institutional health care provider is organized." *Id.*

In their Opposition to Defendants' Motion to Dismiss, Plaintiffs argue that they are not alleging a claim of medical malpractice, rather they are alleging a more general corporate negligence claim, for which an expert affidavit is not required. Their claim for corporate negligence arises out of Defendants' alleged negligence and recklessness "in maintaining, developing, sustaining, disinfecting, cleaning, sterilizing, testing, inspecting, examining, investigating and researching the equipment used in the course of a hemodialysis treatment." It appears that a claim regarding the condition of equipment used within a medical facility is an entirely different matter than the actual provision of medical services. Plaintiffs' claim focuses more on Defendants' maintenance of the facility that is used to provide medical care than on the actual provision of medical care in that facility.

Further, Plaintiffs have conceded that they are not pursuing a medical malpractice cause of action. Considering the consequences of making such a concession, the Court is inclined to give it significant weight for the purposes of this Motion. If, as more facts come to light in this case, it becomes clear that this is indeed a claim for medical malpractice, Plaintiffs' failure to file expert affidavits will prevent them from proceeding in this action. Thus, it seems unlikely that Plaintiffs intend to allege any cause of action in this case other than general corporate negligence.

Because Plaintiffs' claim does not arise out of Defendants' provision of medical services, this cause of action cannot be one for medical malpractice and, thus, the filing of an expert affidavit is unnecessary in this case.

2. *Adequacy of Pleadings*

7

Defendants maintain that Plaintiffs failed to properly plead conduct constituting medical malpractice under Missouri law. As previously established, it is this Court's view that Plaintiffs' claim is one of general negligence, rather than medical malpractice. Thus, it is irrelevant whether Plaintiffs' Amended Complaint states a cognizable cause of action for medical malpractice.

Defendants also suggest that Plaintiffs, in their Amended Complaint, made "omnibus" or "shotgun" allegations in an effort to "effectively obscure what, if any, real grounds for legal relief Plaintiffs might have." Further, Defendants allege that Plaintiffs have not properly pleaded their corporate negligence claim. The Court disagrees with the Defendants on this matter.

Rule 8(a) of the Federal Rules of Civil Procedure only requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While it is necessary, under Rule 12(b)(6), that the pleadings give the recipient fair notice of the nature of the action, "a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." *Bramlet v. Wilson*, 495 F.2d 714 (8th Cir. 1974).

Plaintiffs' pleadings do contain a short and plain statement of their claim of corporate negligence. In order to have a valid claim for negligence, "'the plaintiff must establish that the defendant had a duty to protect the plaintiff from injury, the defendant failed to perform that duty, and the defendant's failure proximately caused injury to the plaintiff.'" *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 257 (Mo. 2002) (en banc) (quoting *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 155 (Mo. 2000) (en banc)). In their Amended Complaint, Plaintiffs offer proof of each of these elements of negligence. They allege that

8

Defendants had "a duty to assure that [the] equipment did not pose a significantly increased risk of injury or death to their patients." They also allege that Defendants "knew or should have known that the current hemodialysis equipment, tools, paraphernalia, and facilities caused [a] significant risk of bodily harm or death," and that, despite this knowledge, Defendants "continued to administer hemodialysis treatments to patients, including Joseph Weaver." Finally, Plaintiffs allege "[t]hat Joseph Weaver sustained injuries and subsequent death as a result of his hemodialysis treatment received at Renal Treatment Centers-Illinois, Inc."

While Plaintiffs' Amended Complaint does not go into great detail about the circumstances underlying their cause of action, great detail is not required. Plaintiffs need only provide a short and plain statement showing that they are entitled to relief. They have laid out the basis for their claim of negligence and, thus, have met this requirement.

3.  *Res Ipsa Loquitur*

Defendants also argue that Plaintiffs improperly rely on the doctrine of *res ipsa loquitur*. They argue that the Amended Complaint does not include allegations of any of the elements required to invoke the doctrine,[2] and, thus, any *res ipsa loquitur* claim Plaintiffs intend to assert

---

[2]Under the doctrine of res ipsa loquitur, the jury is allowed to infer negligence when: "(1) the incident normally does not occur without negligence; (2) and, the incident was caused by an instrumentality under the control of the defendant; (3) and, the defendant has superior knowledge about the cause of the incident." *Weber v. McBride & Son Contracting, Co.*, 182 S.W.3d 643, 645 (Mo. Ct. App. 2005). In their Motion to Dismiss, Defendants assert that res ipsa loquitur also requires that the matter "be within the common knowledge of laymen." In the context of a medical malpractice case, it used to be a requirement that "laypersons know, based upon their common knowledge or experience, that the cause of plaintiff's injury does not ordinarily exist absent the doctor's negligence." *Zumwalt v. Koreckij*, 24 S.W.3d 166, 169 (Mo. Ct. App. 2000), *overruled by Sides v. St. Anthony's Med. Ctr.*, 2008 WL 2971771 (Mo. Aug. 5, 2005) (en banc)). The Supreme Court of Missouri very recently rejected this requirement, holding that a medical expert can testify regarding whether the incident at issue is one that can occur in the absence of negligence. *Sides*, 2008 WL 2971771, at *5. Regardless of whether *Zumwalt* is still good law,

9

must be dismissed. This argument fails to take into account, however, that *res ipsa loquitur* is more of "an inference aiding in the proof" than an actual cause of action that requires proper pleading. *Watts v. Sechler*, 140 S.W.3d 232, 241 (Mo. Ct. App. 2004); *see also Bonnot v. City of Jefferson City*, 791 S.W.2d 766, 769 (Mo. Ct. App. 1990) (stating that "the *res ipsa loquitur* doctrine is not directly applicable to issues of pleading but is relevant in the light of the proof offered in a particular case"). As a result, a plaintiff who makes general allegations of negligence in his or her complaint is not precluded from later relying on the doctrine of *res ipsa loquitur*. *Bonnot*, 791 S.W.2d at 769.

In this case, Plaintiffs have made general allegations of negligence in their Amended Complaint and have given notice of their intent to rely on the doctrine of *res ipsa loquitur*. At this stage in the proceedings, this is all, if not more than is required of the Plaintiffs. Thus, Plaintiffs should not be precluded from relying upon the doctrine of *res ipsa loquitur* in pursuing their negligence cause of action.

D. <u>Products Liability</u>

Defendants maintain that Plaintiffs did not properly plead a cause of action for products liability. While Defendants present a thorough argument as to why the Amended Complaint fails to meet the pleading requirements for a products liability action, Plaintiffs are only pursuing a

---

the layperson common knowledge requirement is not necessary in ordinary negligence actions. As this Court has already established that this case is not proceeding under a medical malpractice theory, it is irrelevant in this case whether the matter is within the common knowledge of laypersons.

10

corporate negligence claim. Because Plaintiffs are not asserting a products liability claim of any sort, this Court has no products liability claim before it to consider for dismissal. Therefore, Defendants' assertion that the Amended Complaint does not properly plead a products liability action must fail.

E.  Punitive Damages

Finally, Defendants maintain that Plaintiffs are precluded from seeking punitive damages in this case because the Amended Complaint "fails to allege that Defendant's conduct even remotely satisfies the elevated standard required for the application of punitive damages." To support this allegation, Defendants cite to Missouri law with respect to the level of proof required to receive punitive damages. While this law may be relevant in deciding whether to *award* punitive damages, it is not relevant in deciding whether Plaintiffs's Amended Complaint properly *pleads* punitive damages. At this point in the proceedings, the only punitive damages issue for consideration by the Court is whether, based on the pleadings, Plaintiffs have the right to seek such damages. The Court is not, at this time, considering whether Plaintiffs are entitled to actually receive punitive damages in this case. That is an issue that the Court will address in due course.

"The manner and details of pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action." 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1230 (3d ed. Supp. 2008). As noted above, all that is required of Plaintiffs in their pleadings is "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), so that Defendants are put on notice of the nature of the action. Fed. R. Civ. P. 12(b)(6). Further,

the Federal Rules of Civil Procedure instruct federal courts that they are to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

In their Amended Complaint, Plaintiffs assert "[t]hat the conduct and course of the Defendants, and each of them, was outrageous, reckless, malicious, wanton and/or done in a manner evincing reckless disregard for the consequences thereof." Further, they specifically state that "Plaintiffs are entitled to an award of punitive damages in a sum in excess of $10,000." This is more than sufficient to put Defendants on notice that Plaintiffs intend to seek punitive damages in this case. Even without this assertion, however, the Court is required to leave open the possibility of awarding punitive damages to the Plaintiffs, if they ultimately show that they are entitled to receive them.

Thus, Defendants' assertion that Plaintiffs are precluded from seeking punitive damages must fail at this stage of the litigation.

F.  Claim Preclusion and Issue Preclusion

Plaintiffs, in their Opposition to the Motion to Dismiss, assert that either claim preclusion or issue preclusion should apply to Defendants' Motion to Dismiss. They maintain that Defendants made the same arguments in consolidated cases pending in Nevada state court and judges in those courts have ruled on those arguments. Thus, they assert that those claims or issues cannot again be raised in this Court.

The doctrines of claim preclusion and issue preclusion are both issues of substantive law and, thus, are governed by the same common law that was applied by the court that rendered the first judgment. *See Lane v. Sullivan*, 900 F.2d 1247, 1250 (8th Cir. 1990); *Klipsch, Inc. v. WWR*

12

*Tech., Inc.*, 127 F.3d 729, 733 (8th Cir. 1997). In this case, the law applied in the first instance was Nevada law. Thus, this Court will apply Nevada law in determining whether either doctrine applies.

> Under Nevada law, in order for res judicata, or issue preclusion, to apply:
>
> (1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party in privity with a party to the prior litigation

*Executive Mgmt., Ltd. v. Ticor Title Ins. Co.*, 963 P.2d 465, 835 (Nev. 1998). Collateral estoppel, or claim preclusion, requires the same elements, "but embraces not only the grounds of recovery that were asserted in the prior suit but those that could have been asserted." *Ayala v. Caesers Palace*, 71 P.3d 490, 492 n.6 (Nev. 2003) (citing *Executive Mgmt.*, 963 P.3d at 473).

This Court is of the opinion that none of the prior decisions in Nevada state court can be categorized as a final judgment on the merits. A judgment is considered to be "final" when "it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court." Restatement (Second) of Judgments § 13 cmt. b (1982). On the other hand, "finality [is] lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination." *Id.* The denial of a motion to dismiss, by its very nature, leaves issues remaining before the court that need to be resolved. All of the issues that were before the court prior to the motion to dismiss remain before the court after that motion is denied. Thus, without analyzing the other two elements, this Court concludes that neither issue preclusion nor claim preclusion should apply in this case.

## IV. CONCLUSION

Defendants have failed to sufficiently prove that any of their six allegations are sufficient for this Court to grant their Motion to Dismiss, in whole or in part. Both parties will be given the opportunity to amend their pleadings and change or add parties following the issuance of a case management order.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Renal Treatment Centers-Illinois, Inc.'s Motion to Dismiss [doc. #52] is **DENIED** and Plaintiffs' claims remain before this Court.

Dated this 24th Day of September, 2008.

                                                             _____
                                                             E. RICHARD WEBBER
                                                             UNITED STATES DISTRICT JUDGE